Stephen H. Wilder et al., Appellants, v. Commissioners of Whiteside and Rock Island Special Drainage District, Appellees.

## Gen. No. 5,736.

1. DRAINS—*farm drainage act does not authorize pumping station.* A petition for mandamus to compel the commissioners of a drainage district to drain a thousand acres of land therein, which had not been reclaimed by the system installed, is properly dismissed where the evidence shows that the water in the district ditches is only from .3 to 1.44 feet above the surface of the outlet river at low water, and that substantial relief can be afforded only by constructing levees and gates and operating a pumping station, since the Farm Drainage Act does not suggest such methods, nor authorize the incurring of great expense for such purpose.

2. DRAINS—*farm drainage act limited to natural drain.* The intention of the Farm Drainage Act is that the land is to be drained in artificial ditches or natural water courses by the natural flow of the water to lower level, and greater authority will not be read into it.

3. DRAINS—*levee act authorizes pumping stations.* The construction and maintenance of levees and a pumping station are author-

ized in drainage districts organized under the Levee Act of May 13, 1905; such authority not existing prior to, nor outside of, said act.

Appeal from the Circuit Court of Whiteside county; the Hon. EMERY C. GRAVES, Judge, presiding. Heard in this court at the October term, 1912. Affirmed. Opinion filed March 12, 1913. Rehearing denied April 3, 1913. *Certiorari* denied by Supreme Court (making opinion final).

A. A. WOLFERSPERGER and McCALMONT & RAMSAY, for appellants.

WILLIAM H. ALLEN and McMAHON & ROGERS, for appellees.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

The Whiteside and Rock Island Special Drainage District, in the counties of Whiteside and Rock Island, was organized under the Farm Drainage Act, approved May 29, 1879, and in force July 1, 1879 (Laws of 1879, p. 142). That and other acts were revised and consolidated in the Farm Drainage Act, approved June 27, 1885, and in force July 1, 1885. Stephen H., Parker H., and Charles M. Wilder, the appellants, own about 1,000 acres of land in the lower part of said drainage district, which is practically unreclaimed by the drainage system installed and operated by the district. They filed an original and an amended petition against the commissioners of said district for a writ of mandamus to command the district to drain their lands and, if necessary, to levy and collect the taxes necessary therefor. The amended petition was answered and the cause was tried by the court without a jury, and the petition was dismissed. Petitioners appeal from that judgment.

There were many rulings by the court upon propositions of law and questions of fact, of which complaint is made. There is much discussion upon many technical questions concerning the science of draining

lands.  The evidence is exceedingly voluminous and the discussion of the case by counsel is lengthy.  We have concluded that the judgment of the court below should be sustained upon grounds which make it unnecessary to discuss the rulings of the court upon many questions.

It is clear that appellants are entitled to have their lands drained, if the Farm Drainage Act furnishes the means wherewith it can be done.  Appellants claim that by deepening and widening the channel at a certain railroad bridge, and deepening and widening and perhaps straightening a certain bayou, which leads from said bridge to the Rock River a mile and a half distant by a winding way, or half a mile distant in a direct line, the lands of appellants can be substantially benefited.  We are satisfied from the evidence that no such benefit can be given to appellants' lands by work of that kind.  At low water the surface of the water in Rock River is from .3 of a foot to 1.44 feet below the level of the surface of the water in the drainage ditches above the bridge.  No amount of deepening or widening or straightening the waterway at the railroad bridge and thence to the river can afford any substantial relief to appellants' lands, and an improvement of the kind described would enable the high water of Rock River to flow back in still greater volume over the lands of the district.  We are of opinion from the evidence that the only method by which substantial relief can be afforded to the unreclaimed lands of appellants is either by obtaining the right to use the railroad grade for several miles east from the point in question as a levee, or building a levee for several miles, and either establishing gates at the various railroads or filling underneath said railroad bridges, and then establishing and operating a pumping station at the lower end of the district at or near said first mentioned railroad bridge, and thereby to pump all the waters of the district over said railroad embankment or said levee and discharge them into

Rock River. We are unable to find any authority in the Farm Drainage Act which authorizes the construction and maintenance of levees and a pumping station. That authority is expressly conferred upon drainage districts organized under the Levee Act by the act approved and in force May 13, 1905 (Hurd's Revised Statutes, 1911, p. 938, being paragraph 210 of chapter 42.) And that act undertakes to ratify former action by drainage districts organized under the Levee Act in establishing and maintaining pumping plants. The course of legislation upon that subject appears to indicate that it was the view of the legislature that power to build and maintain levees and a pumping station did not exist prior to the passage of the act just cited. The establishment and maintenance of levees and a pumping station would be very expensive, according to the evidence before us. In our opinion it was the intention of the Farm Drainage Act that the land should be drained in artificial ditches or natural watercourses, by the natural flow of the water to a lower level. We do not feel at liberty to read into the Farm Drainage Act authority to incur such great expense in doing things of which no suggestion is given in the act. Therefore, regardless of any minor error that may appear in the rulings of the court upon the propositions of law and questions of fact submitted to it, we are of opinion that the judgment of the court below is correct and should be affirmed.

The judgment is therefore affirmed.

*Affirmed.*